UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

Eddie Shawn Weaver,                                Case No:

    Plaintiff,

vs.

LexisNexis Risk Solutions Inc.,

    Defendant.

_____/

# PLAINTIFF'S COMPLAINT
## JURY DEMAND

1. Plaintiff, Eddie Shawn Weaver ("Plaintiff" or "Mr. Weaver") by and through the undersigned counsel files this Complaint for violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* ("FCRA") against Defendant, LexisNexis Risk Solutions Inc. ("Defendant" or "LexisNexis").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Lake County, Florida.

## PARTIES

4. Plaintiff is a natural person who, at all times relevant to this action was a resident of Taylor County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant, LexisNexis is a corporation incorporated under the laws of the State of Delaware and authorized to do business in the State of Florida.

6. LexisNexis maintains its principal place of business located at 1000 Alderman Drive, Alpharetta, GA 30005 with a registered agent for service of process listed as CT Corporation System 1200 South Pine Island Road, Plantation, FL 33324.

7. LexisNexis is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

**The FCRA**

8. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

9. Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

10. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

11. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

12. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in

order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

13. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies were under no obligation to treat an identity theft claim any different than a regular dispute.

14. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies ("CRAs") to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15. A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1).

16. If a block is declined, the CRA must then notify the consumer in writing of the business name and address of any furnisher of information

that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information. See 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

17. In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

18. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Lexis Nexis Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

19. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with

fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

20. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C.S. § 1681i(a)(1)(A).

21. In performing the reinvestigation, the FCRA requires a CRA to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

22. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

23. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

24. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

25. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i. credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

26. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein. As the FCRA sets forth, a consumer reporting agency is:

> [A]ny ***person*** which, ***for monetary fees***, dues, or on a cooperative nonprofit basis, ***regularly engages*** in whole or in part ***in the practice of assembling*** or evaluating consumer credit information or ***other information on consumers for the purpose of furnishing consumer reports to third parties***, and which uses any means or facility ***of interstate commerce for the purpose of preparing*** or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

27. As demonstrated above, LexisNexis operates as a consumer reporting agency because (1) in exchange for compensation; (2) LexisNexis regularly assembles information on consumers; (3) for the purpose of furnishing consumer reports; and (4) by means of interstate commerce.

28. Second, LexisNexis markets InstantID® Q&A as using "LexID®, [its] advanced data-linking technology, [to] provide[] instant access to billions of commercially available and regulated data sources and non-credit content" to weed out "fraudsters."[1] Further, InstantID® Q&A "delivers real-time Pass/Fail results, intelligent reporting and archiving to support informed decisions" by LexisNexis' customers. *Id.*

29. Third, LexisNexis obtains and assembles the information for the purpose of providing it to third parties, who then obtain and use the

---

[1] https://risk.lexisnexis.com/products/instantid-q-and-a (last accessed on February 20, 2023).

information from LexisNexis in order to determine a consumer's eligibility for, among other things, credit, insurance, or employment.

30. LexisNexis had actual knowledge that its customers use the website and its data for FCRA purposes.

31. Fourth, LexisNexis utilizes multiple means of interstate commerce to sell its reports, which are disbursed to prospective employers and creditors around the nation.

## FACTUAL ALLEGATIONS

32. On January 12 2022, Mr. Weaver received correspondence from Olympus Insurance ("Olympus") indicating a LexisNexis report, with NCF reference number ending in 5014, was used to provide information to Olympus, which resulted in Olympus sending an adverse action letter to Mr. Weaver. A copy of this adverse action letter is attached hereto as Exhibit "A."

33. Based upon information and belief, the adverse action taken by Olympus was due to the inaccurate information reported by LexisNexis.

34. Then, on November 29 2022, Mr. Weaver sent a letter to LexisNexis via certified mail, disputing certain inaccurate information on his consumer credit report ("Initial Dispute."). The inaccurate information disputed by Mr. Weaver, included but is not limited to, professional licenses, physical addresses, as well as other identifying information and records of

previous properties which were owned by Mr. Weaver's father, Eddie Louis Weaver, who had passed away at the time of the dispute.

35. Based on information and belief, the consumer file related to Mr. Weaver was mixed or merged with that of his now deceased father.

36. In addition to the inaccurate information being reported due to the mixing and/or merging of the Weavers files, there was also information in Mr. Weaver's consumer report that was the result of identity theft committed against Mr. Weaver years earlier.

37. The Initial Dispute included Mr. Weaver's father's obituary from November 2022, an FTC identity theft affidavit, and a police report. The Initial Dispute along with its attachments are attached hereto to as Exhibit "B."

38. On January 9, 2022, Mr. Weaver received correspondence from LexisNexis, along with information on how to access his new consumer report. After a review of the consumer report, Mr. Weaver realized that the majority of the items that were disputed in the Initial Dispute had not been amended and/or removed from his consumer report.

39. A subsequent phone dispute addressing the inaccurate information described in the Initial Dispute was made on January 23, 2023. ("Second Dispute.")

40. A copy of the consumer report as well as handwritten notes from Sue Allen Weaver, Mr. Weaver's spouse detailing the date of the Second Dispute is attached hereto as Exhibit "C."

41. While certain disputed information was removed relating to the identity theft, the majority of the mixed file information stemming from Mr. Weaver's father's file still remained on the consumer report.

42. In total, there were more than seventy (70) individual items, which were identified in the Initial Dispute that remained on the consumer report more than 30 days later.

43. On February 6, 2023, Mr. Weaver sent a second dispute letter, but third overall dispute, ('Third Dispute") to LexisNexis detailing more than thirty (30) items on his consumer report that were inaccurate. The Third Dispute is attached hereto as Exhibit "D."

44. On March 2, 2023, Mr. Weaver sent one final dispute letter to LexisNexis ("Fourth Dispute.") In the Fourth Dispute, Mr. Weaver asked for the deletion of all property assessor records which were associated with his late father and his mother, Joyce Weaver. In addition, he requested that inaccurate professional license records associated with his late father be removed from the report.

45. In support of the Fourth Dispute, Mr. Weaver provided a copy of his marriage certificate, his driver's license and Social Security card, documentation from the Florida Department of business and professional

regulation website, and a copy of a mortgage loan statement from Lakeview. The Fourth Dispute is attached as Exhibit "E."

46. Despite submitting four separate disputes to LexisNexis, Mr. Weaver's consumer reports from LexisNexis dated March 14, 2023, shows that there are over twenty (20) inaccurate items still being associated with him but belonging to his father, the late Mr. Eddie L. Weaver. The report is attached hereto as Exhibit "F."

### COUNT I – VIOLATIONS OF 15 U.S.C. §1681i AGAINST LEXISNEXIS

47. Plaintiff incorporates by reference his allegations in paragraphs 1 -46 above as if fully set forth herein.

48. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA. 15 U.S.C. §1681a(f).

49. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA. 15 U.S.C. §1681a(c).

50. At all times relevant hereto, the reports sold by LexisNexis are "consumer reports" as provided for under the FCRA. 15 U.S.C. §1681a(d)(1).

51. During the relevant time frame, LexisNexis received Plaintiff's written and telephonic identity theft and mixed information disputes which specified which information was inaccurate and why it was inaccurate.

52. Lexis Nexis violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

53. LexisNexis' acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

54. In the alternative, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

55. As a result of LexisNexis' violations of the FCRA, Plaintiff suffered mental and emotional distress associated with receiving unfavorable insurance rates, mental and pain and anguish, damage to his reputation, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against LexisNexis for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

### COUNT II– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST LEXISNEXIS

56. Plaintiff incorporates by reference his allegations in paragraphs 1 – 46 above as if fully set forth herein.

57. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA. 15 U.S.C. §1681a(f).

58. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA. 15 U.S.C. §1681a(c).

59. At all times relevant hereto, the reports sold by LexisNexis are "consumer reports" as provided for under the FCRA. 15 U.S.C. §1681a(d)(1).

60. During the relevant time frame, LexisNexis received Plaintiff's disputes regarding his mixed file with his late father.

61. LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it publishes and maintains concerning Plaintiff.

62. LexisNexis' acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

63. In the alternative, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

64. As a result of LexisNexis' failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with receiving unfavorable insurance rates, mental and pain and anguish, damage to his

reputation, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against LexisNexis in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

### **COUNT III – VIOLATIONS OF 15 U.S.C. §1681c-2 AGAINST LEXISNEXIS**

65. Plaintiff incorporates by reference his allegations in paragraphs 1 -46 as if fully set forth herein.

66. At all times relevant hereto, LexisNexis is and was a "consumer reporting agency" as provided for under the FCRA. 15 U.S.C. §1681a(f).

67. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA. 15 U.S.C. §1681a(c).

68. At all times relevant hereto, the reports sold by LexisNexis are "consumer reports" as provided for under the FCRA. 15 U.S.C. §1681a(d)(1).

69. During the relevant time frame, LexisNexis received Plaintiff's disputes which addressed the information in his consumer report that was the result of identity theft.

70. LexisNexis failed to block the information that Plaintiff specifically identified that was the result of identity theft in violation of section 1681c-2.

71. LexisNexis' acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to U.S.C. 1681n.

72. In the alternative, LexisNexis negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. 1681o.

73. As a result of LexisNexis' failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his consumer file resulting from identity theft, damage to his reputation, receiving unfavorable insurance rates, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against LexisNexis in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an

amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

74. Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2023

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**

*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
eiman@sharminlaw.com
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
*Attorney for Plaintiff*